[Cite as *Huntington Natl. Bank v. Slodov*, 2021-Ohio-2932.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| HUNTINGTON NATIONAL BANK, | : | |
| Plaintiff-Appellee, | : | No. 110113 |
| v. | : | |
| ANDREW SLODOV, ET AL., | : | |
| Defendants-Appellants. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 26, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910810

***Appearances:***

Carlisle, McNellie, Rini, Kramer & Ulrich, Co., L.P.A., and
Eric T. Deighton, *for appellee.*

Javitch Block L.L.C. and Michael D. Slodov, *for appellants.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} In 2007, defendants-appellants Andrew Slodov and Lisa Slodov ("the Slodovs") signed a promissory note for $764,000 in favor of Sky Bank, secured by a property located in Pepper Pike, Ohio. Beginning in August 2018, the Slodovs were

unable to make payments on the note. The Huntington National Bank ("Huntington"), successor in interest by merger to Sky Bank, filed this foreclosure case in February 2019. The foreclosure matter was tried before a magistrate on the issue of whether Huntington satisfied the condition precedent to foreclosure by mailing the Notice of Intention to Accelerate and Foreclosure ("the acceleration notice") with sufficient first-class postage. The magistrate found the condition precedent was satisfied. The trial court adopted the magistrate's decision and issued a judgment of foreclosure.

{¶ 2} On appeal, the Slodovs raise the following five assignments of error for our review:

> I. The trial court prejudicially erred, abused its discretion and committed reversible error in denying defendants' motion under Civ.R. 56(F).
>
> II. The trial court prejudicially erred, abused its discretion and committed reversible error in denying defendants' motion to dismiss or in the alternative, motion in limine, for failure to timely file a witnesses list identifying each person purportedly involved in mailing the acceleration notice.
>
> III. The trial court prejudicially erred, abused its discretion and committed reversible error in relying solely on inadmissible hearsay from a witness lacking personal knowledge of the business routine used at the time the acceleration notice was purportedly mailed, to support its decision.
>
> IV. The trial court's determination that the notice of intention to accelerate and foreclose was properly addressed, had sufficient postage and was properly deposited in the mail was against the manifest weight of the admissible evidence.
>
> V. The trial court prejudicially erred, abused its discretion and committed reversible error overruling defendants' objections,

ordering the adoption of the decision of the magistrate, finding that all conditions precedent to foreclose the defendants' mortgage were satisfied, and entering a foreclosure judgment in favor of Huntington.

{¶ 3} All five assignments of error relate to the Slodovs' claim that Huntington failed to prove that it has satisfied the condition precedent to foreclosure, in particular, that it properly mailed the acceleration notice to the Slodovs prior to accelerating the subject note. Having reviewed the record and applicable case law precedent, we find no merit to the claims raised by Slodovs and affirm the judgment of the trial court.

**Procedural Background**

{¶ 4} Our review of the record reflects the following procedural facts pertinent to the claims raised by the Slodovs on appeal.

{¶ 5} On February 8, 2019, Huntington filed a complaint seeking to foreclose the Slodovs' home. In their answer, the Slodovs denied Huntington mailed the acceleration notice prior to accelerating the subject note.

{¶ 6} On September 4, 2019, Huntington filed a motion for summary judgment, which the trial court denied "as moot" while staying the case to allow Huntington to review the Slodovs' loss mitigation application. Huntington subsequently filed a second motion for summary judgment. The trial court again denied the motion "as moot" while granting the Slodovs leave to file an amended answer.

{¶ 7} On February 28, 2020, Huntington filed its third motion for summary judgment. To establish that Huntington mailed the acceleration notice, Huntington

attached an affidavit of a Huntington employee to its motion for summary judgment. The affidavit authenticated Exhibit F, a copy of the acceleration notice addressed to the Slodovs at the subject property's address and dated September 24, 2018. The employee averred that "a true and accurate copy of the notice of default, mailed by first-class mail on the date of the letter, is attached hereto as Exhibit 'F'."

{¶ 8} On March 4, 2020, the Slodovs filed notice of their request for discovery. The discovery request sought specific evidence relating to the mailing of the subject acceleration notice, including documents identifying all persons involved in the mailing of the notice as well as documents reflecting the amount of postage and the fact of mailing.

{¶ 9} On March 11, 2020, the Slodovs filed a motion under Civ.R. 56(F), asking the trial court to refuse the application of judgment or, in the alternative, to grant an extension of time to May 1, 2020, for their response to the summary judgment motion. They contended that the information sought in their discovery request was necessary to rebut the bank employee's averment that the acceleration notice was mailed by first class on the date of the letter.

{¶ 10} In response, on March 17, 2020, Huntington filed notice that it had already responded to the Slodovs' discovery request. On March 26, 2020, Huntington filed an opposition to the Slodovs' Civ.R. 56(F) motion, asserting that no extension of time would be warranted because it had fully responded to the discovery request.

{¶ 11} On April 14, 2020, Huntington's counsel sent a supplemental discovery response to the Slodovs. The supplemental discovery included Consolidated Note Logs. Huntington's counsel stated that his review of this business record appeared to indicate that two copies of the acceleration notice were mailed to the Slodovs "by First Class Mail at an expense of 33 cents each." Counsel's statement regarding the first-class postage, as the trial court determined later, precluded summary judgment in this foreclosure case because it created a question of whether the notice was sent with sufficient postage.

{¶ 12} On June 2, 2020, the trial court denied the Slodovs' Civ.R. 56(F) motion requesting that the trial court refuse the application for judgment, but granted the Civ.R. 56(F) motion for an extension of time, allowing the Slodovs to file their brief in opposition to the summary judgment motion by July 6, 2020.

{¶ 13} On June 18, 2020, the Slodovs filed their opposition to Huntington's motion for summary judgment, claiming that Huntington failed to prove it mailed the acceleration notice with sufficient postage. They pointed to Huntington's supplemental discovery response sent on April 14, 2020, where counsel stated the notices to them were mailed with 33-cents postage, yet the last time first-class postage cost 33 cents was in 1999. The Slodovs' opposition also included their affidavits averring that they did not receive the acceleration notice from Huntington.

{¶ 14} On July 17, 2020, Huntington filed a reply brief, pointing out that its business reflected an entry that indicated that the acceleration notice was properly sent to the Slodovs on September 24, 2018.

{¶ 15} On July 21, 2020, the trial court granted Huntington's motion for summary judgment in part and denied it in part, finding there were no issues of material fact as to the amount due or the Slodovs' lack of payments entitling the bank to enforce the note. However, the trial court found a material issue of fact regarding whether the acceleration notice was properly mailed to the Slodovs. The trial court held that Huntington's counsel stated in its supplemental discovery response that the copies of the acceleration notice were mailed to the Slodovs by first-class mail at an expense of 33 cents while the cost of first-class postage at the time was 55 cents. The sole issue for trial was whether the acceleration notice was properly mailed with sufficient postage.

{¶ 16} On July 31, 2020, Huntington filed a pretrial statement indicating it intended to call a bank employee to testify regarding his or her review of the bank's business records.

{¶ 17} On October 27, 2020, before the bench trial commenced, the Slodovs filed a motion to dismiss or, in the alternative, motion in limine to exclude Huntington's witness and all of its exhibits. They claimed that Huntington failed to sufficiently identify the witness who would be testifying at trial and it was prejudicial to them. The Slodovs requested that the trial court exclude testimony of any witness who had knowledge of the facts and circumstances surrounding the mailing of the September 24, 2018 acceleration notice. The magistrate denied the motion.

**Trial Testimony**

{¶ 18} Because the trial court had granted summary judgment in favor of Huntington on the other elements of the foreclosure claim, the only remaining issue to be tried was whether the acceleration notice was properly mailed to the Slodovs with sufficient postage. David Esakov, a representative for Huntington, testified for the bank, and the Slodovs testified on their own behalf.

{¶ 19} Esakov testified he held the position of litigation specialist and litigation specialists are "the witnesses and the custodians of the bank." He testified that, as a part of his training, he was trained on how the bank maintains its business records created in the normal course of business, and that the business records are created contemporaneous with the transactions or events. He had reviewed the bank business records regarding the Slodovs' note. In particular, he had reviewed all the notational systems the bank had for that account, including mailers and notes on the bank's mortgage system. He had also specifically reviewed the status of the mail for that account.

{¶ 20} Esakov then authenticated a copy of the acceleration notice at issue, which was submitted by Huntington as Exhibit F. He testified that the acceleration notice was coded as an "XC413" letter in the bank's system and the code was what the bank uses to create a copy of the acceleration notice to be sent to a borrower in default.

{¶ 21} Esakov testified regarding the bank's practice and procedure for the generation and mailing of the notices. To familiarize himself with the mailing

practice and procedure, he had spoken to individuals working in Huntington's Home Savers Department and in the mailroom, and he was directed to the bank's written practice and procedure regarding mailing.

{¶ 22} Before testifying about the mailing of the acceleration notice to the Slodovs, Esakov authenticated the bank's Consolidated Note Logs regarding the Slodovs' loan, which was submitted as Huntington's Exhibit J. Esakov then testified regarding the various codes in the logs regarding the Slodovs' account. The codes reflect the acceleration notice (coded as XC413) was sent on September 24, 2018. The code "33" in the logs refers to 33 days the bank would wait to review the account to see if the acceleration notice has been responded to or if the notice should be resent. Esakov confirmed that Huntington's counsel had earlier mistakenly interpreted "33" to be the amount of postage the acceleration notice was sent with.

{¶ 23} Esakov also testified regarding the mailing process for sending the notices based on his review of the bank's mailing practice and procedure. Each acceleration notice is sent by both ordinary first-class mail and certified mail. For the regular first-class mail, a letter containing the acceleration notice would go through a mail meter machine, which weighs the envelope and applies the first-class postage, and the first-class postage is the default setting for the meter machine. Esakov testified he had reviewed the practice and procedure and also verified the meter machine's first-class postage default setting with the employees in the mailroom. After being run through the meter machine, the mail is put in an outgoing box and then collected by a courier service and taken to the post office.

{¶ 24} Esakov testified that, according to the business records he reviewed and the bank's mailing processes, he was able to determine that the acceleration notice was prepared and mailed properly to the Slodovs.

{¶ 25} Esakov also testified that if incorrect postage was put on the envelope containing the acceleration notice, it would have been returned to the bank and a business record would have been made of it. There was no indication from the logs regarding the Slodovs' account that the first-class mail was returned for insufficient postage. Regarding the certified mail, Esakov testified it was not accepted and returned to the bank.

{¶ 26} There was no objection to Esakov's testimony or the two exhibits submitted by Huntington. On cross-examination, the Slodovs questioned Esakov if he had direct knowledge of the mailing of the notice, pointing out that he was not working at the bank at the time the acceleration notice was mailed.

{¶ 27} Lisa Slodov testified that the foreclosure case had torn her family apart and that she did not receive the notices sent to her and her husband. On cross-examination, however, she acknowledged that other members of the household would collect the mail sometimes. She also testified she had no recollection of the mail received from Huntington in September 2018 because she would pass such mail, some of them unopened, on to her husband. Andrew Slodov testified that the variable interest rate for the loan was initially one-and-half percent but the bank increased it to five-and-half percent, multiplying the amount they were originally

paying.  Notably, he did not testify that he did not receive the subject notice from Huntington.

**Trial Court Decision and Appeal**

{¶ 28} The magistrate issued a decision after the bench trial.  Noting that there is no requirement in the Slodovs' note that Huntington prove *receipt* of the acceleration notice, the magistrate concluded that Huntington properly provided the acceleration notice.

{¶ 29} The Slodovs filed their objections to the magistrate's decision, claiming the magistrate erred in finding Huntington provided the requisite notice to the Slodovs because Esakov lacked personal knowledge of the mailing practice used by Huntington in September 2018 and also that he was not competent to testify regarding the matter because he was not employed by Huntington at the time the acceleration notice was mailed.  The Slodovs also claimed the magistrate erred in denying their motion to dismiss or, in the alternative, motion in limine to exclude testimony of Huntington's witness due to its failure to identify the name of the witness.

{¶ 30} The trial court issued a decision overruling the Slodovs' objections and adopted the magistrate's decision.  The court noted the trial was limited to one simple issue — whether Huntington attached the correct postage to the subject acceleration notice given Huntington's counsel's representation that the code "33" referred to the postage used to mail the acceleration notice.  The court found Huntington's witness's testimony admissible even though he had not been identified

by name. The court in addition found the witness's testimony regarding his review of the business record proper.

**Notice of Acceleration as Condition Precedent to Foreclosure**

{¶ 31} It is undisputed where prior notice of default and acceleration is required by a provision in a note, the provision of notice is a condition precedent to foreclosure. *See, e.g.*, *Wells Fargo Bank, N.A. v. Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269. Paragraph 8 of the Slodovs' note states that "any notice that must be given to me under this Note will be given by delivering it or by *mailing it by first class mail to me* at the property address above * * *." (Emphasis added.)

{¶ 32} The only issue at trial and in this appeal is whether Huntington satisfied the condition precedent. More specifically, whether Huntington mailed the acceleration notice to the Slodovs by first-class mail. All five assignments of error on appeal relate to this issue. We address the assignments of error out of order for ease of discussion.

**Business Records as Evidence for Mailing**

{¶ 33} Under the third assignment of error, the Slodovs argue the trial court abused its discretion in permitting a witness without personal knowledge to offer evidence regarding the mailing of the acceleration notice. Under the fourth assignment of error, they argue the trial court's determination that Huntington had mailed the acceleration notice to them was against the manifest weight of the evidence because the bank failed to offer admissible evidence that the envelope

containing the acceleration notice was properly addressed, had sufficient postage, and was properly deposited in the U.S. mail on September 24, 2018. Under the fifth assignment of error, they argue that, without direct evidence of mailing in the form of a witness with personal knowledge regarding the mailing of the acceleration notice, the condition precedent to foreclosure was not satisfied and the trial court erred in adopting the magistrate's decision. Because the claims are related, we address the third, fourth, and fifth assignments of error jointly.

{¶ 34} In this case, the bank's witness Esakov testified about the mailing of the subject notice based on his review of Huntington's business records, in particular, the Consolidated Note Logs.

{¶ 35} Evid.R. 803(6) governs authentication of business records and it provides a hearsay exception for business records.[1] *Ocwen Loan Servicing, L.L.C. v. Malish*, 2018-Ohio-1056, 109 N.E.3d 659, ¶ 16 (2d Dist.). As this court has noted, the business records exception under Evid.R. 803(6) is

> "based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts

---

[1] Evid.R. 803(6) provides that, even though a business record contains hearsay, it is admissible if it satisfies the following requirements:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

> recorded and a self-interest to be served through the accuracy of entries made and kept with knowledge that they will be relied upon in a systematic conduct of such businesses, are accurate and trustworthy."

*Herrera v. Phil Wha Chung*, 8th Dist. Cuyahoga No. 109793, 2021-Ohio-1728, ¶ 24, quoting *Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).

{¶ 36} To meet the authentication requirement in the business-records hearsay exception under Evid.R. 803(6), "'the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document.'" *Id.*, quoting *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991).

{¶ 37} However, the witness need not have personal knowledge of the creation of the particular record in question and need not have been in the employ of the company at the time the record was made; all that is required is that the witness must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business. *M&T Bank v. Wood*, 2d Dist. Clark No. 2019-CA-46, 2020-Ohio-10, ¶ 46, citing *Fifth Third Mtge. Co. v. Campbell*, 2d Dist. Montgomery No. 25458, 2013-Ohio-3032, ¶ 8.

{¶ 38} The court has also emphasized that a witness providing the foundation for a recorded business activity need not have firsthand knowledge of the particular transaction. *U.S. Bank N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-1038, ¶ 46 (a loan analysis for a bank averred that her affidavit was based on her personal knowledge obtained from reviewing the files and

this court rejected appellant's claim that the affiant must have firsthand knowledge of the transaction at issue). *See also Bank of Am., N.A. v. Merlo*, 11th Dist. Trumbull No. 2012-T-0103, 2013-Ohio-5266, ¶ 27 (the witness authenticating a business record need not have firsthand knowledge of the transaction and the only requirement is "the witness be sufficiently familiar with the operation of the business and with the circumstances of the record's preparation and maintenance that he can reasonably testify, on the basis of this knowledge, that the record is what it purports to be and that it was made in the ordinary course of business").

{¶ 39} The trial court has wide discretion in determining whether a witness has sufficient personal knowledge to testify, *Starinchak v. Sapp*, 10th Dist. Franklin No. 04AP-484, 2005-Ohio-2715, ¶ 27, and we will not disturb such a determination absent an abuse of discretion. *Id.*

{¶ 40} Here, our review of Esakov's testimony indicates that he properly authenticated the business record at issue, the Consolidated Note Logs (Huntington's Exhibit J). He testified that, as a litigation specialist, he worked as a witness and custodian for the bank. He was trained on the bank's operation involving how it maintains its business records, which are created in the normal course of business and contemporaneous with the pertinent transactions or events by a person with knowledge. He also testified he was familiar with and had reviewed the business records involved in the Slodovs' note.

{¶ 41} By way of Esakov's testimony regarding its business records, Huntington produced evidence that the subject acceleration notice was properly

mailed to the Slodovs.  He described at great length Huntington's automated mailing procedure involved in the mailing of the acceleration notices.  Based on his review and knowledge of the business record (the Consolidated Note Logs), he testified that the notation in the business record indicates the subject notice was mailed to the Slodovs with appropriate first-class postage on September 24, 2018.  In particular, he testified that the meter machine that affixes the postage is set to appropriate first-class mail postage and the code "33" refers to the number of days for subsequent review rather than first-class postage.

{¶ 42} The Slodovs claim there is no direct evidence that the acceleration notice was properly mailed to them as there was no witnesses with firsthand knowledge regarding the mailing of the envelope containing the notice.  The Slodovs argue the evidence regarding the mailing must come from employees who actually handled the mailing, claiming Esakov was not employed by the bank at that time and lacked personal knowledge of the mailing on September 24, 2018.  The Slodovs also claim Esakov's testimony was not based on firsthand knowledge because his testimony mentioned several bank employees in the mailroom to whom he talked concerning the bank's mailing operation.

{¶ 43} Contrary to the Slodovs' claim, the witness testifying about the business records need not have personal knowledge of the creation of the particular record in question and need not have been employed by the company at the time the record was made.  *M&T Bank*, *supra*.  Moreover, such a witness need not possesses firsthand knowledge of the particular transaction.  *U.S. Bank N.A.*, *supra*.  Esakov

authenticated the business record involved in the mailing and testified that the business record indicated the notice was mailed with appropriate first-class mail postage to the Slodovs on September 24, 2018. Huntington was not required to prove it mailed the subject notice by presenting witnesses who actually addressed the envelope, affixed the postage, and deposited the notice in the mail.

{¶ 44} Paragraph 7(C) of the Slodovs' note requires that Huntington "send" written notice and paragraph 8 requires the acceleration notice to be "given by delivering it or by mailing it first class mail." The condition precedent to foreclosure is satisfied by Huntington's mailing of the acceleration notice, not Slodovs' receipt of the notice. The evidence presented by Huntington was sufficient evidence that it mailed the subject notice to the Slodovs by first-class mail and thereby satisfied the condition precedent to foreclosure.

{¶ 45} Finally, Esakov did not testify to any improper hearsay statements made by the mailroom employees regarding the Slodovs' account. They simply verified the bank's meter machine is set by default to first-class mail and referred Esakov to the bank's written practice and procedure.

{¶ 46} For the same reasons, we find no merit to Slodovs claim that the trial court's finding that the envelope containing the notice was properly addressed, had sufficient postage, and was properly deposited in the mail was against the manifest weight of the evidence.

{¶ 47} Generally, in an appeal from a civil bench trial, we review the trial court's judgment under a manifest-weight standard of review. *United States Fire*

*Ins. v. Am. Bonding Co.*, 1st Dist. Hamilton Nos. C-160307 and C-160317, 2016-Ohio-7968, ¶ 16-17. We weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered. *E.G. Licata, L.L.C. v. E.G.L., Inc.*, 6th Dist. Lucas Nos. L-17-1124 and L-17-1125, 2018-Ohio-2032, ¶ 12, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. When weighing the evidence in a civil appeal, we must make every presumption in favor of the finder of fact and construe the evidence, if possible, to sustain the trial court's judgment. *Bank of Am., N.A. v. Calloway*, 2016-Ohio-7959, 74 N.E.3d 843, ¶ 24 (8th Dist.).

**{¶ 48}** Under the terms of the Slodovs' note, the bank is only required to send the acceleration notice by first-class mail. When the foreclosing bank produces evidence that a notice was "sent" and the mortgage does not require the bank to show receipt of notice, the borrower's averment that he or she did not receive the notice does not create a genuine issue for trial. *GMAC Bank v. Bradac*, 8th Dist. Cuyahoga No. 105242, 2017-Ohio-7888, ¶ 48.

**{¶ 49}** Here, because Huntington's counsel stated in discovery that the code "33" in the Consolidated Note Logs refers to postage, which was insufficient for first-class postage, the trial court found a genuine issue of fact and set the matter for trial. At trial, Huntington produced evidence of the mailing of the acceleration notice with appropriate first-class postage. Lisa Slodov testified she did not receive the

acceleration notice but acknowledged she had no recollection of the mail received from Huntington in September 2018 because she would pass such mail, some of them unopened, to her husband; Andrew Slodov did not testify that he did not receive the subject notice from Huntington. Given the testimony presented by the parties, the trial court's finding that the acceleration notice was mailed to the Slodovs is not against the manifest weight of the evidence.

{¶ 50}The Slodovs also claim the trial court abused its discretion in adopting the magistrate's decision when there was no direct evidence of the mailing. For the foregoing reasons, we also find no merit to this claim. The third, fourth, and fifth assignments of error are overruled.

**Business Records Witness**

{¶ 51} The second assignment of error raised in this appeal relates to whether Huntington must identify the name of the witness who would be testifying at trial. They argue that, because Huntington failed to identify the witness by name, the trial court abused its discretion in denying its motion in limine.

{¶ 52} "A motion in limine is a means of raising objection to an area of inquiry to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined during the course of the trial." *Mender v. Chauncey*, 2015-Ohio-4105, 41 N.E.3d 1289, ¶ 14 (4th Dist.), quoting *Independent State Bank of Ohio v. Hartzell*, 4th Dist. Washington No. 90CA02, 1991 Ohio App. LEXIS 39, 1991 WL 2197, 2 (Jan. 7, 1991). "The purpose of a motion in limine is to avoid injection into the trial of matters which are irrelevant, inadmissible and

prejudicial." *Id.*, citing *State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). *See also Groves v. Ihsanullah*, 2016-Ohio-7703, 66 N.E.3d 771, ¶ 32 (8th Dist.). We review a trial court's ruling on a motion in limine for an abuse of discretion. *United States Bank v. Amir*, 8th Dist. Cuyahoga No. 97438, 2012-Ohio-2772, ¶ 18.

{¶ 53} We find no merit to the Slodovs' claim. The record reflects that Huntington filed a pretrial statement on July 31, 2020, stating that it would call "a Huntington employee, who will testify at the trial about his or her review of Huntington's business records," and Huntington attached the business records at issue to its pretrial statement. On the day of trial, the Slodovs filed a motion to dismiss or, in the alternative, motion in limine on the ground that Huntington did not identify the name of the specific witness who would be testifying or the subject matter of his or her testimony. The magistrate denied the motion. The trial court, in adopting the magistrate's decision, found there was no surprise or prejudice to the Slodovs because the Slodovs were aware of the subject of the witness's testimony and the exhibits regarding which the witnesses would be testifying, given that the only issue for trial was whether there was sufficient postage affixed to the envelope containing the notice sent to the Slodovs. The trial court's finding regarding the lack of surprise or prejudice and its denial of the motion in limine did not constitute an abuse of discretion. The second assignment of error is without merit.

**Civ.R. 56(F) Motion**

{¶ 54} Under the first assignment of error, the Slodovs claimed the trial court abused its discretion in denying their Civ.R. 56(F) motion.

{¶ 55} Civ.R. 56(F) ("When affidavits unavailable") states:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 56} The record reflects that Huntington filed its third motion for summary judgment on February 28, 2020, attaching an affidavit of an employee. On March 4, 2020, the Slodovs filed notice of their request for discovery. Among other requests, they asked Huntington to identify all employees "who participated in delivering (or mailing via first-class mail to the defendants [at their address]) a certain letter dated September 24, 2018, captioned Notice of Intention to Accelerate and Foreclosure * * *." They also sought production of pertinent documents relating to the mailing.

{¶ 57} On March 11, 2020, the Slodovs filed a motion under Civ.R. 56(F) asking the trial court to deny the motion for summary judgment or "grant leave to respond after the completion of discovery." They requested an extension of time until May 1, 2020, for their opposition to the summary judgment motion.

{¶ 58} On March 17, 2020, Huntington filed a notice of service of discovery responses in response to the Slodovs' discovery request. On April 15, 2020, it filed

another notice that it served supplemental responses to the Slodovs' discovery request.

{¶ 59} On the day the Slodovs' opposition to Huntington's motion for summary judgment would have been due, March 27, 2020, the Supreme Court of Ohio issued a tolling order in response to the COVID-19 pandemic. The order tolled, retroactive to March 9, all the deadlines in the Ohio Revised Code until July 30, 2020.[2]

{¶ 60} On June 2, 2020, the trial court denied the Slodovs' Civ.R. 56(F) motion to refuse the application for judgment, but granted their request for an extension of time. Two days later, the trial court issued an order extending the deadline of Slodovs' opposition to Huntington's motion for summary judgment to July 6, 2020, noting that the Supreme Court of Ohio had lifted the tolling order as it relates to foreclosure cases.

{¶ 61} On June 18, 2020, the Slodovs filed their opposition to Huntington's motion for summary judgment.

{¶ 62} On appeal, the Slodovs claim they were deprived of discovery going to the issue of the mailing of the acceleration notice and the trial court abused its

---

[2] We also note that on March 16, 2020, the Cuyahoga County Common Pleas Court issued an "Order Declaring a Judicial Emergency and Continuity of Operations of the Court due to COVID-19 Pandemic." As part of this order, the court issued a stay of "all foreclosure cases" for a period of 60 days. *See Tax Ease Ohio, L.L.C. v. Keeton*, 8th Dist. Cuyahoga No. 109862, 2021-Ohio-1815, ¶ 16. On May 15, 2020, the 60-day stay of all foreclosure cases terminated; on May 26, 2020, the common pleas court issued a specific order regarding foreclosure cases, stating that the tolling provisions of the Ohio Supreme Court's March 27, 2020 order are henceforth inapplicable to foreclosure cases. *Id.* at ¶ 19.

discretion in denying their Civ.R. 56(F) motion on June 2, 2020, when the date for their opposition to the summary judgment had been tolled.

{¶ 63} The trial court has wide discretion to grant or deny a request for a continuation pursuant to Civ.R. 56(F) and we will not reverse the trial court's decision absent an abuse of discretion. *Nationstar Mtge. L.L.C. v. Jessie*, 8th Dist. Cuyahoga No. 109394, 2021-Ohio-439, ¶ 27.

{¶ 64} Under Civ.R. 6, the due date of the Slodovs' response to the summary judgment motion would have been March 27, 2020. The Slodovs' Civ.R. 56(F) motion requested a continuation to May 1, 2020. While there was a 60-day stay for foreclosure cases, the common pleas court terminated the 60-days stay on May 15, 2020. The trial court nonetheless allowed the Slodovs to file the opposition to the summary judgment motion by July 6, 2020.

{¶ 65} When considering a Civ.R. 56(F) motion, "the trial court was in the best position to determine whether an extension and/or additional discovery was necessary." *Grill v. Artistic Renovations*, 2018-Ohio-747, 106 N.E.3d 934, ¶ 35 (8th Dist.). After the Slodovs filed the Civ.R. 56(F) motion, Huntington supplemented their discovery response. While they claim on appeal the discovery was insufficient for them to properly oppose the motion for summary judgment, the Slodovs never filed a motion to compel discovery before filing their opposition to the summary judgment motion, more than two weeks before it would be due. Having reviewed the record, we cannot say that the trial court abused its discretion in denying the Civ.R. 56(F) motion to refuse the application for judgment while granting an

extension of time for the Slodovs to file their opposition to the summary judgment motion. The first assignment of error is without merit.

**{¶ 66}** Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR